UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Gregory Alan Gaylor**

**v.**                                          Case No.  04-cv-372-PB

**Warden, New Hampshire**
**State Prison**

## O R D E R

Gregory Alan Gaylor has filed a habeas corpus petition
challenging his state court convictions.  The Warden of the New
Hampshire State Prison has responded with a summary judgment
motion arguing that Gaylor's claims are barred by the one-year
statute of limitations that governs habeas corpus petitions.

## I.  BACKGROUND

Gaylor was indicted in state court on a variety of theft
counts in December 1997.  A superseding indictment added a count
for willful evasion of the New Hampshire business profits tax.
Gaylor was tried in March and April 1999.  He absconded while the

jury was deliberating.  On April 14, 1999, he was found guilty on more than 100 counts of theft and tax evasion.  He was sentenced in absentia to a prison term of 14 ½ to 29 years. Gaylor's attorneys filed a notice of appeal on his behalf on July 29, 1999.  The New Hampshire Supreme Court dismissed the appeal on October 15, 1999.  Gaylor was arrested in Switzerland on November 13, 1999, and extradited to New Hampshire in August 2000.

Gaylor filed a habeas corpus petition in this court on January 9, 2001 ("first federal petition").  I dismissed the petition on May 31, 2001 because Gaylor failed to exhaust state court remedies with respect to several of his claims.

Gaylor filed a motion with the New Hampshire Supreme Court asking it to reconsider its dismissal of his appeal while his first federal habeas corpus petition was pending.  On June 19, 2001, the court rejected his motion without prejudice to his right to file a habeas corpus petition.  On June 28, 2001, Gaylor filed a habeas corpus petition in the New Hampshire Supreme Court ("supreme court petition").  On August 14, 2001, the court denied the petition without prejudice to Gaylor's right to refile his petition in superior court.

Gaylor filed a habeas corpus petition in Merrimack County Superior Court on March 7, 2002 ("superior court petition").  The superior court held an evidentiary hearing and denied the petition on July 7, 2003.  The New Hampshire Supreme Court affirmed the superior court's dismissal of the petition on January 6, 2004.  The supreme court refused to vacate its order declining to hear Gaylor's appeal of the superior court's habeas corpus decision and to reopen his case on June 9, 2004.  The supreme court upheld the superior court's dismissal of Gaylor's motion for a new trial on December 27, 2004.

Gaylor filed his current petition on October 5, 2004.

## II.  **ANALYSIS**

The warden argues that Gaylor's current petition is barred by 28 U.S.C. § 2244(d)[1] because he waited more than a year after

---

[1]  28 U.S.C. § 2244(d) provides in pertinent part that:
"(1) [a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
        . . . or;

-3-

his convictions became final before he filed the petition.
Gaylor has responded with a variety of arguments as to why his
petition is not time-barred.  He claims that: (1) the limitation
period for several of his claims did not begin to run until he
discovered the factual basis for the claims; (2) the limitation
period should be equitably tolled while his first federal
petition was pending; (3) the limitation period does not apply
because he is "actually innocent;" and (4) the limitation period
does not apply to his claims challenging extradition even if it
applies to his other claims.  In the alternative, he argues that
I should reopen his first federal petition pursuant to Fed. R.
Civ. P. 60(b).  I first explain why the warden is correct that
more than one year of countable time has passed between the date
that Gaylor's convictions became final and the date when he filed
his current petition.  I then turn to Gaylor's specific arguments

---

        (D)  the date on which the factual predicate
        of the claim or claims presented could have
        been discovered through the exercise of due
        diligence.
    (2)  the time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this subsection."

as to why his claims are not time-barred.

**A.   More than one year elapsed between the time when Gaylor's convictions became final and the filing of his current petition.**

Gaylor's convictions became final on January 13, 2000, when the time for seeking certiorari review of his convictions expired.[2]  See Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005).  Although the limitation period is suspended while any "properly filed application for state post-conviction or other collateral review is pending," 28 U.S.C. § 2244(d)(2), Gaylor cannot claim that the limitation period was suspended while his first federal petition was pending because a federal habeas corpus petition "is not an 'application for state post-conviction or other collateral review.'"  Duncan v. Walker, 533 U.S. 167, 181 (2001).  Nor can Gaylor claim that the limitation period was suspended while his untimely motion to reconsider the dismissal of his appeal was pending because the motion was not "properly

---

[2]   To the extent that Gaylor contends that his convictions did not become final until either June 19, 2001, when the New Hampshire Supreme Court declined to reconsider the dismissal of his direct appeal, or August 14, 2001, when that court rejected his habeas corpus petition, his contentions are plainly meritless.

filed."[3]   See Pace v. DiGuglielmo, 125 S. Ct 1807, 1814 (2005).

The time during which Gaylor's two state court habeas corpus petitions were pending is excludable under § 2244(d)(2) because both petitions were "properly filed."[4]   A more difficult issue is whether the seven month gap between the termination of the supreme court petition and the filing of the superior court petition should be excluded.   The Supreme Court held in Carey v. Saffold, 536 U.S. 214, 223 (2002) that a habeas corpus petition is deemed to be "pending" for purposes of § 2244(d)(2) during the time between the conclusion of a lower court habeas corpus proceeding and the timely commencement of a second habeas corpus petition in a higher court.   The present case is clearly distinguishable.   First, unlike in Carey, this case involves a gap between the conclusion of a petition filed in the supreme court and the commencement of a similar proceeding in a *lower*

---

[3]   The motion to reconsider was untimely because it was not filed within 10 days of the dismissal order.   See N.H. Supr. Ct. R. 22(2).

[4]   Gaylor had 90 days from the dismissal of his state habeas corpus petitions in which to seek certiorari review with the United States Supreme Court.   However, time during which a petitioner may seek certiorari review from the dismissal of a habeas corpus petition is not excluded from the limitation period.   David v. Hall, 318 F.3d 343, 345 (1st Cir. 2003).

court.  The petitioner in Carey needed to file in the lower court first and pursue his challenges in the California Supreme Court both to comply with state habeas corpus practice and to satisfy federal exhaustion rules.  Id. at 221-24.  Thus, it makes sense for a petition to be "pending" during the gap between two such proceedings.  In Gaylor's case, he was not subject to a requirement that he file in the lower court first, and he chose to proceed directly to the supreme court.  Second, the Supreme Court recognized in Carey that its holding would not apply in jurisdictions where the state's highest court has appellate jurisdiction over habeas corpus proceedings and its original habeas corpus jurisdiction is limited to "extraordinary cases." Id. at 224.  The New Hampshire Supreme Court has repeatedly recognized that it will exercise its original habeas corpus jurisdiction only in extraordinary cases.  See, e.g., In re LaForest, 110 N.H. 508, 509 (1970); Labelle v. State, 108 N.H. 241 (1967).  Thus, Carey is inapplicable here and the gap between the conclusion of the supreme court petition and the commencement of the superior court petition is countable time under § 2244(d).

In summary, the limitation clock began to run in this case on January 13, 2000, when Gaylor's convictions became final.  It

-7-

ran until June 28, 2001, when Gaylor filed the supreme court
petition.  At that point, 1 year, 5 months, and 14 days of
countable time had elapsed.  The limitation clock was suspended
until August 14, 2001, when the supreme court denied the
petition.  It then continued to run until March 7, 2002, when
Gaylor filed his superior court petition, and was suspended until
January 6, 2004, when the supreme court affirmed the superior
court's dismissal of the superior court petition.  That added an
additional 6 months and 20 days to the countable time total.
Thus, Gaylor permitted a total of 2 years and 3 days of countable
time to elapse between the date when his convictions became final
and the date that he filed his current petition.[5]

**B.**   **Gaylor knew or reasonably should have known of the**
     **factual basis for his claims when his convictions**
     **became final.**

---

   [5]  Additional countable time may have elapsed between
January 6, 2004, when the supreme court affirmed dismissal of the
superior court petition, and October 5, 2004, when Gaylor filed
the current petition, however he continued to litigate in state
court and might have an argument that the limitation clock should
be suspended during that time.  I need not address this issue as
Gaylor had already well exceeded the § 2244(d) limit by May 7,
2004.

Gaylor invokes § 2244(d)(1)(D) in arguing that the limitation period for several of his ineffective assistance of counsel claims did not begin to run until recently, when he learned of the factual basis for the claims.  In particular, he asserts that his claim that trial counsel erred in failing to call an expert witness on his behalf did not accrue until October 18, 2002, when his habeas corpus counsel discovered an unpaid invoice from the expert in trial counsel's records.  According to Gaylor, this was the first time that he had any inkling that his trial counsel had refused to call the expert because of a fee dispute rather than as a matter of trial strategy.  He similarly contends that his claim that trial counsel improperly withheld certain partnership statements and general ledgers from his expert and the jury did not accrue until October 31, 2002, when he became aware of the claim while reviewing trial counsel's records.[6]  Neither argument is persuasive.

---

[6]  Gaylor also alleges that he could not have discovered a variety of other claims earlier.  Gaylor provides no evidence other than his own statements that he did not learn of the claims until recently.  General averments that a claim was not discovered earlier do not demonstrate that the basis for the claim could not have been discovered at trial through the exercise of reasonable diligence.

Gaylor knew at trial that his counsel had not called the
expert as a witness despite the fact that he had been disclosed
as a defense expert.  Moreover, Gaylor presumably would have
known what the expert would have said if he had testified because
Gaylor had access to the expert's deposition.  Although the
discovery of the unpaid invoice may have supplied a motive for
counsel's failure to call the expert, Gaylor did not need to be
aware of his attorney's motivations to be on notice of his
potential claim that his attorney had erred in failing to call
the expert as a trial witness.

Gaylor's argument based on counsel's alleged failure to
introduce the partnership financial statements and ledgers
suffers from a similar flaw.  He clearly knew of the existence of
the statements and ledgers prior to trial.  See January 28, 1998
Letter from Gaylor to Attorney Bradford Kuster, Ex. 3 to Resp.'s
Third Mot. for Summ. J.  Gaylor also reasonably should have known
whether the financial documents supported his defense.  Finally,
he has no persuasive argument as to why he could not reasonably
have learned during the trial that his counsel erred in failing
to introduce the allegedly exculpatory records.  Because Gaylor
cannot demonstrate that he could not have discovered the factual

-10-

predicate for his claims through the exercise of reasonable diligence before his convictions became final, he cannot delay commencement of the limitation period for this reason.

**C.   The limitation period was not equitably tolled while Gaylor's first federal habeas corpus petition was pending**.

Gaylor argues that the limitation period should be equitably tolled while his first federal petition was pending because the United States Supreme Court did not rule that the limitation period continues to run during the pendency of a federal habeas corpus petition until *after* I dismissed his petition.  The Supreme Court has recognized that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace, 125 S. Ct. at 1814; see also Cordle, 428 F.3d 48-49; Neverson v. Farquharson, 366 F.3d 32, 39-44 (1st Cir. 2004).  Gaylor has failed to satisfy either prong of the equitable tolling test.

First, the record does not show that Gaylor litigated his habeas corpus claims diligently.  Gaylor waited until four days before the limitation period expired before he filed the first federal petition.  He offers no explanation for this delay and none is apparent in the record.[7]  Gaylor also inexplicably waited nearly seven months after the court dismissed the supreme court petition before he filed the superior court petition.  These pre- and post-filing delays are so significant that Gaylor's claims could not be saved from § 2244(d) even if the limitation period were tolled while the first federal petition was pending.

---

[7]  Although Gaylor was not returned to the United States until August 2000, he cannot rely on the fact that he was contesting his extradition as an excuse for his failure to file his habeas corpus petition sooner.  A petitioner cannot point to problems of his own making to support a claim for equitable tolling.  See Verikokidis v. Galetka, 42 Fed. Appx. 311, 312 (10th Cir. 2002) (unpublished) (delay not excused where petitioner's fugitive status contributed to delay); see also Cordle, 428 F.3d at 48 (extraordinary circumstances warranting equitable tolling must be beyond litigant's control).  In any event, Gaylor was in contact with his New Hampshire attorneys during the extradition process and thus he was aware that the New Hampshire Supreme Court had dismissed his appeal by January 10, 2000.  See March 12, 2001 Order, Case No. 00-013-B at 3.  Thus, Gaylor cannot argue that his failure to collaterally challenge his conviction prior to January 9, 2001 is excused by the fact that he was contesting his extradition for part of the time during which the limitation period was running.

Second, Gaylor cannot demonstrate that extraordinary circumstances justify his request.  Gaylor argues that it is extraordinary that the U.S. Supreme Court did not determine that the limitation period continued to run while a federal habeas corpus petition was pending until after I dismissed the first federal habeas petition.  See Walker, 533 U.S. at 181-82.  However, as the Supreme Court has recently recognized in a similar context, "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, [the Supreme Court] arrived at a different interpretation [of § 2244(d)]." Gonzalez v. Crosby, 125 S. Ct. 2641, 2650 (2005).  Nor can Gaylor claim that my failure to warn him of the potential consequences of the dismissal of the first federal petition was extraordinary.  Federal law simply does not require such warnings.  Pliler v. Ford, 542 U.S. 225, 231 (2004).  Finally, Gaylor cannot credibly claim that he was affirmatively misled into believing that the limitation period would be tolled while his petition was pending.  In short, there are no extraordinary circumstances in this case that justify equitable tolling.

**D.    Gaylor is not entitled to relief from § 2244(d) based on his claim of actual innocence.**

Neither the Supreme Court nor the First Circuit has authoritatively determined whether a habeas corpus petitioner is entitled to relief from § 2244(d) based on evidence that he is "actually innocent."  In fact, the only First Circuit case that even addresses the issue suggests that a claim of actual innocence will *not* relieve a petitioner of his obligation to comply with the statute.  See David, 318 F.3d at 347 ("A couple of cases have conjectured that actual innocence might override the one-year limit . . . but to us these dicta are in tension with the statute and are not persuasive.") (citation omitted).

Actual innocence is not "an independent ground of habeas relief, save (possibly) in extraordinary circumstances in a capital case," id. at 347-8, but it may act as a "'gateway'" to consideration of the merits of a petitioner's constitutional claims where those claims are otherwise procedurally barred as successive or abusive.  Schlup v. Delo, 513 U.S. 298, 315 (1995) (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).  Under Schlup, a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be

-14-

exculpatory scientific evidence, trustworthy eyewitness accounts,
or critical physical evidence -- that was not presented at
trial." Id. at 327.[8]  This evidence must demonstrate that "it is
more likely than not that no reasonable juror would have
convicted [the petitioner] in light of the new evidence." Id. at
324.

It is unclear whether the Supreme Court would extend Schlup
to reach claims like Gaylor's.  Although the analogy to Schlup is
reasonable, the First Circuit has expressed doubt as to the
decision's applicability in the § 2244(d) context.  Nevertheless,
I need not decide the question because Gaylor has failed to
produce any new reliable evidence that supports his actual

_____

[8]  There is a circuit split as to the meaning of the term
"new" in Schlup.  Compare Gomez v. Jaimet, 350 F.3d 673, 679 (7th
Cir. 2003) ("All Schlup requires is that the new evidence is
reliable and that it was not presented at trial."), with Amrine
v. Bowersox, 238 F.3d 1023, 1028 (8th Cir. 2001) ("'[E]vidence is
new only if it was not available at trial and could not have been
discovered earlier through the exercise of due diligence.'")
(quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir.
1997)).  In the context of granting leave to file a successive
habeas corpus petition, the First Circuit has noted in dicta that
new facts are those "which could not have been discovered through
the exercise of due diligence at or before the time when [the
petitioner] filed his first federal habeas petition." Rodwell v.
Pepe, 324 F.3d 66, 68 (1st Cir. 2003).  My analysis of Gaylor's
actual innocence claim does not turn on the resolution of this
conflict of authority.

innocence claim.

Gaylor bases his claim of actual innocence on the following: (1) the 1987 and 1988 limited partnership financial statements and general ledgers, which were not presented to the jury;[9] and (2) the expert opinions of Stephen Lawlor, a certified public accountant who was deposed but not called as a witness, and Robert A. Shaines, an attorney who did not participate in Gaylor's trial defense.  See Pet.'s Memo. of Law in Supp. of Actual Innocence at 3-6.  I discuss each in turn.

### 1.  1987 and 1988 Financial Documents

Gaylor states that the 1987 and 1988 financial documents "fully document all partnership financial transactions and cash withdrawals for the majority of the indictments," id. at 6, but he has failed to explain how the documents support his actual innocence claim.  In fact, the accounting firm that prepared the financial statements noted that "[m]anagement [e.g., Gaylor] has elected to omit substantially all of the disclosures ordinarily included in cash basis financial statements . . . . these

---

[9]  Gaylor contends that the state's trial exhibit 15 included a "completely inaccurate" version of the financial statements and general ledger for 1988.  Obj. to Resp.'s Third Mot. for Summ. J. at 47.

financial statements are not designed for those who are not informed about such matters." 1988 Accountants' Compilation Report, Pet.'s Appx. 3 at 10; see also 1987 Accountants' Compilation Report, Pet.'s Appx. 3 at 2. Thus, the financial statements shed no light on Gaylor's innocence of the crimes of which he was convicted. The general ledgers are similarly unhelpful. Standing alone, the financial statements and general ledgers do nothing to advance Gaylor's actual innocence claim.

**2.   Expert Opinions**

According to Gaylor's expert disclosure, Lawlor was expected to testify that Gaylor's financial transactions were appropriate in light of both customary methods of partnership accounting and the limited partnership agreement. Supreme Court Pet. Supp. App. at 42. Lawlor was also expected to testify that many of the accounting and bank records necessary to evaluate Gaylor's financial transactions no longer exist, and that those that do exist demonstrate that Gaylor handled partnership funds properly. Id. ¶ 43. Similarly, Shaines reviewed the 1987 and 1988 financial documents and the limited partnership agreement, and concluded that the amounts withdrawn by Gaylor "should have been

-17-

considered a return of capital, a reimbursement of partnership expenses, and/or an advance of his management fee under the terms of the limited partnership agreement as amended."  Shaines Aff. ¶ 5; see also Tr. of Jan. 17, 2003 Hrg. at 33 (same).

Although Lawlor and Shaines purport to use the 1987 and 1988 financial documents to demonstrate Gaylor's innocence, their predicted testimony does not qualify as "new reliable evidence" under the Schlup framework.  Their opinions are conclusory interpretations of the partnership agreement and financial documents, unsupported by specific explanation regarding Gaylor's financial transactions.  As such, they lack the inherent reliability required by Schlup.  Moreover, both experts rely heavily on the partnership agreement, which was admitted in evidence at trial and therefore cannot be "new."

**E.    Gaylor's extradition claims are subject to § 2244(d).**

Gaylor argues that § 2244(d) does not apply to his extradition claims.  His argument is difficult to follow but it appears to be based on the assumption that he is in federal custody rather than state custody because he is subject to the control of the President pursuant to 18 U.S.C. § 3192.  This

-18-

argument is unavailing because Gaylor plainly is in custody pursuant to the judgment of a state court even though he is also subject to presidential oversight.  As such, his claims are governed by § 2244(d).

**F.     Gaylor cannot rely on Rule 60(b)(6) to reopen
         his first habeas corpus petition.**

Gaylor alternatively argues that I should reopen his first federal petition pursuant to Rule 60(b)(6) because my ruling dismissing his petition is inconsistent with <u>Rhines v. Weber</u>, 161 L. Ed. 2d 440 (2005), a recent Supreme Court decision that requires a habeas court to stay rather than dismiss a petition that contains both exhausted and unexhausted claims.  I reject this argument because it is based on a misreading of <u>Rhines</u>.

In <u>Rhines</u>, the Supreme Court authorized a court to stay rather than dismiss a habeas corpus petition containing unexhausted claims if the petitioner can establish good cause for his failure to exhaust his claims in state court.  <u>Id.</u> at 451. As I have explained, Gaylor cannot satisfy this requirement. Thus, the premise on which his Rule 60(b)(6) argument is based is incorrect.

### III.   <u>CONCLUSION</u>

The warden's motion for summary judgment (Doc. No. 39) is granted.  Gaylor's habeas corpus petition (Doc. No. 3) is denied.

SO ORDERED.


<u>/s/ Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

January 24, 2006

cc:  Gregory Alan Gaylor, pro se
     Karen E. Huntress, Esq.